1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   In re DEEP VEIN THROMBOSIS            MDL Docket No 04-1606 VRW
     LITIGATION
12                                                   ORDER

13   This Document Relates To:

14   Vincent v American Airlines, Inc,
     No 07-1604

15
     Richelet v Lufthansa German
16   Airlines, No 04-3831

17   Rietchel v US Airways, Inc, No
     01-3444
18
     Dabulis v Singapore Airlines,
19   Inc, No 03-1929

20   _____/

21

22           On June 25, 2004, the Judicial Panel on Multidistrict

23   Litigation centralized pre-trial proceedings in cases involving

24   "complex core questions concerning whether various aspects of

25   airline travel cause, or contribute to, the development of deep

26   vein thrombosis in airline passengers." Doc #1 at 2.  In total,

27   some 78 actions were filed and transferred to this district.

28   Ultimately, all transferred actions were assigned to the

**United States District Court**
For the Northern District of California

undersigned.  Deep vein thrombosis (DVT) is a medical condition that occurs when a thrombus (a blood clot) forms in a deep vein, usually in the extremities of the leg.  DVT can lead to serious injury or death if the thrombus breaks off and lodges in the brain, lungs or heart, thereby causing a heart attack, stroke or other debilitating effects.  Studies indicate a link between air travel and DVT, which can be attributed to relatively prolonged periods of immobility coupled with low cabin pressure and poor oxygenation (technically, "hypobaric hypoxia").  Plaintiffs in this litigation suffered (or sue on behalf of an individual who suffered) from DVT-related injuries during or after travel aboard commercial aircraft.

On February 14, 2005, the court granted summary judgment in favor of Boeing in its capacity as manufacturer of the aircraft in question in 17 cases.  Doc #144, 356 F Supp 2d 1055 (ND Cal 2005).  All claims against airline defendants arising from domestic flights ("non-Warsaw cases") were dismissed pursuant to the federal preemption rationale announced in the court's order of March 11, 2005.  Doc #151, 2005 WL 591241 (ND Cal Mar 11, 2005).  Plaintiffs appealed.  On October 4, 2007, the Ninth Circuit affirmed in part, finding that the failure to warn claims were preempted by the Federal Aviation Act of 1958, 49 USC § 40103.  <u>Montalvo v Spirit Airlines</u>, -- F3d --, 2007 WL 2874401 (9th Cir 2007).  But the Ninth Circuit remanded plaintiffs' seating configuration claim for further factual development.  Specifically, the panel found insufficient evidence on which to evaluate whether a seat reconfiguration would materially affect federal deregulation, which is a prerequisite for preemption under the Airline Deregulation Act of 1978, 49 USC § 41713(b)(1).  <u>Montalvo</u>, 2007 WL 2874401 at 7-9.

**United States District Court**
For the Northern District of California

1     MDL 1606 included approximately 50 cases in which

2  plaintiffs alleged that they suffered from DVT-related injuries

3  during or after international flights ("Warsaw cases").  On August

4  21, 2006, the court granted summary judgment in 37 Warsaw cases in

5  which plaintiffs alleged liability based on asserted failure to

6  warn regarding DVT.  Doc #469, 2006 WL 2547459 (ND Cal Aug 21,

7  2006).  See also <u>Caman v Continental Airlines</u>, 455 F3d 1087 (9th

8  Cir 2006).  The court directed entry of summary judgment under FRCP

9  54(b) in favor of any airline defendant against which the only

10 Warsaw Convention accidents alleged were "the onset of DVT or the

11 absence or insufficiency of a warning regarding DVT or policy level

12 decisions regarding the same."  Doc #469.

13     The following Warsaw Convention DVT cases remain in MDL

14 1606:

15          <u>Rietchel v US Airways, Inc</u>, No 01-3444
           <u>Dabulis v Singapore Airlines, Inc</u>, No 03-1929
16         <u>Richelet v Lufthansa German Airlines</u>, No 04-3831
           <u>Vincent v American Airlines, Inc</u>, No 07-1604
17
18 These are cases in which plaintiffs make other claims in addition

19 to "failure to warn" claims.  On December 4, 2006, the court

20 granted partial summary judgment for the airline defendants on the

21 failure to warn claims for the reasons announced in the court's

22 August 21, 2006 order.  Doc #528.  On October 12, 2007, the court

23 denied the airline defendants' motions for summary judgment on the

24 remaining claims in 01-3444 (Rietchel) and 03-1929 (Dabulis).  Doc

25 #699.

26     Regarding 04-3831 (Richelet), the court set a dispositive

27 motion hearing date of October 18, 2007.  Doc #566.  No summary

28 \\

**United States District Court**
For the Northern District of California

judgment motions have been filed.  The case is currently set for a pretrial conference on November 27, 2007 at 9:00am.

Presently before the court is defendant American Airlines, Inc's ("American Airlines") motion for summary judgment in 07-1604 (Vincent).  Doc #690.  Because the court finds this matter suitable for determination without oral argument, the hearing scheduled for November 1, 2007, is VACATED.  See Civ LR 7-1(b).

## I

### A

"Once a properly documented motion has engaged the gears of Rule 56, the party to whom the motion is directed can shut down the machinery only by showing that a trialworthy issue exists." McCarthy v Northwest Airlines, Inc, 56 F3d 313, 315 (1st Cir 1995). That is, the court must determine whether genuine issues of material fact exist, resolving any doubt in favor of the party opposing the motion.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v Liberty Lobby, Inc, 477 US 242, 248 (1986).  Further, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 US at 248.  And the burden of establishing the absence of a genuine issue of material fact lies with the moving party.  Celotex Corp v Catrett, 477 US 317, 322-23 (1986).  Summary judgment is granted only if the moving party is entitled to judgment as a matter of law.  FRCP 56(c).

United States District Court
For the Northern District of California

1    The nonmoving party may not simply rely on the pleadings,

2 however, but must produce significant probative evidence, by

3 affidavit or as otherwise provided in FRCP 56, supporting its claim

4 that a genuine issue of material fact exists.  TW Elec Serv, Inc v

5 Pacific Elec Contractors Ass'n, 809 F2d 626, 630 (9th Cir 1987).

6 Summary judgment is appropriate when the nonmoving party "fails to

7 make a showing sufficient to establish the existence of an element

8 essential to that party's case, and on which that party will bear

9 the burden of proof at trial."  Celotex at 322.  The evidence

10 presented by the nonmoving party "is to be believed, and all

11 justifiable inferences are to be drawn in his favor."  Anderson,

12 477 US at 255.  "[T]he judge's function is not himself to weigh the

13 evidence and determine the truth of the matter but to determine

14 whether there is a genuine issue for trial."  Anderson, 477 US at

15 249.

16    The evidence presented by both parties must be

17 admissible.  FRCP 56(e).  Conclusory, speculative testimony in

18 affidavits and moving papers is insufficient to raise genuine

19 issues of fact and defeat summary judgment.  Thornhill Publishing

20 Co, Inc v GTE Corp, 594 F2d 730, 738 (9th Cir 1979).  Hearsay

21 statements in affidavits are inadmissible.  Japan Telecom, Inc v

22 Japan Telecom America Inc, 287 F3d 866, 875 n 1 (9th Cir 2004).

23

24                              B

25    The United States adheres to the Convention for the

26 Unification of Certain Rules Relating to International

27 Transportation by Air, concluded at Warsaw, Poland, October 12,

28 1929, popularly referred to as the "Warsaw Convention."  49 Stat

                              5

United States District Court

For the Northern District of California

3000, reprinted in note following 49 USC § 40105.  The purposes of the Warsaw Convention are two-fold:  "providing uniformity in respect to documentation and certain procedural matters, and imposing limitations on liability."  <u>In re Aircrash in Bali, Indonesia on April 22, 1974</u>, 684 F2d 1301, 1307 (9th Cir 1982). See also <u>Maugnie v Compagnie Nationale Air France</u>, 549 F2d 1256, 1259 (9th Cir 1977) ("[T]he Convention functions to protect passengers from the hazards of air travel and also spreads the accident cost of air transportation among all passengers.")

"[R]ecovery for a personal injury suffered on board an aircraft or in the course of embarking or disembarking, if not allowed under the Convention, is not available at all."  <u>El Al Israel Airlines, Ltd v Tseng</u>, 525 US 155, 161 (1999) (quotations and citation omitted).  The remaining MDL plaintiffs do not dispute that the injuries they sustained (DVT and resultant complications) were triggered during "international transportation" for purposes of Article 1(2).  Nor do plaintiffs dispute that the Warsaw Convention applies and preempts all claims arising under local law. Accordingly, plaintiffs can recover from the airline defendants, if at all, only within the framework established by the Warsaw Convention.

Article 17 of the Warsaw Convention provides:

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the <u>accident</u> which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

49 Stat 3018 (emphasis added).

\\

United States District Court

For the Northern District of California

1    In other words, as explained by the Supreme Court in <u>Air</u>
2  <u>France v Saks</u>, 470 US 392 (1985), a carrier "is liable to a
3  passenger under the terms of the Warsaw Convention only if the
4  passenger proves that an 'accident' was the cause of her injury."
5  <u>Saks</u>, 470 US at 396.  In <u>Saks</u>, the Supreme Court defined "accident"
6  for purposes of Article 17 as "an unexpected or unusual event or
7  happening that is external to the passenger."  <u>Saks</u>, 470 US at 405.
8  "This definition should be flexibly applied after assessment of all
9  the circumstances surrounding a passenger's injuries."  <u>Saks</u>, 470
10  US at 405.  And because any injury "is the product of a chain of
11  causes," a plaintiff need only show that "some link in the chain
12  was an unusual or unexpected event external to the passenger."
13  <u>Saks</u>, 470 US at 406.

14    When, however, "the injury indisputably results from the
15  passenger's own internal reaction to the usual, normal, and
16  expected operation of the aircraft, it has not been caused by an
17  accident, and Article 17 of the Warsaw Convention cannot apply."
18  <u>Saks</u>, 470 US at 406.  And because DVT "clearly is the type of
19  internal reaction to the normal operation of the aircraft, with no
20  unusual external event," the development of DVT is not itself an
21  accident within the meaning of Article 17.  <u>Rodriguez v Ansett</u>
22  <u>Australia Ltd</u>, 383 F3d 914, 917 (9th Cir 2004), cert denied, 544 US
23  922 (2005).  But DVT-related injuries may be compensable under the
24  Warsaw Convention if caused by an Article 17 accident.  With these
25  principles in mind, the court proceeds to American Airlines' motion
26  for summary judgment in 07-1604 (Vincent).
27  \\
28  \\

7

United States District Court

For the Northern District of California

**II**

**A**

Plaintiff Mair Vincent (Ms Vincent) is a citizen of the United Kingdom and a resident of both Abergavenny, Monmouthshire, United Kingdom and Almeria, Spain.  Doc #1 in 07-1604 (Compl), ¶1. According to Ms Vincent's complaint, on April 12, 2005, Ms Vincent was traveling as a fare paying passenger on an international air ticket, and boarded American Airlines Flight 69 from Madrid, Spain to Miami, Florida, a flight of almost 10 hours.  Doc #1 ¶8.  After a five hour layover, Ms Vincent boarded American Airlines Flight 4944 from Miami, Florida to Freeport, Bahamas, her ultimate destination.  Doc #1 ¶8.  Ms Vincent alleges that the seating on her flights was "very cramped" and that approximately halfway into the first flight, she "began to feel stiffness and tenderness in the calf of her left leg which was also swollen and warm to the touch."  Doc #1 ¶9.  Ms Vincent continued to suffer from pain in her left calf during the remainder of the plane trip.  Doc #1 ¶9.

Ms Vincent filed her complaint in this action on March 21, 2007 alleging that an event or accident onboard her flight caused her to develop DVT.  Doc #1 in 07-1604.  In addition to failure to warn clams, which have already been dismissed, Vincent alleges that she experienced "unreasonably prolonged periods of immobility, irregular altitude, inadequate air circulation and oxygenation, inadequate pressurization within the cabin due to a faulty and abnormal pressurization system[s], low humidity, unusual delay due to bad weather or any other reason, turbulence, cramped seating, inadequate hydration, and/or other unexpected and/or

\\

**8**

unusual event associated with Defendant's aircraft and/or said
flight * * *."  Doc #1 ¶10.

B

In its motion, American Airlines argues that there was no
unusual or unexpected event external to Ms Vincent on Flight 69 or
on Flight 4944 on April 12, 2005.  Doc #690 at 6.  American
Airlines represents that there were no incident reports or reports
of aircraft malfunction for these flights and that Ms Vincent has
been unable to produce any evidence to support her accident
allegations.  Doc #690 at 6, 13-14.

In her opposition, Ms Vincent fails to address American
Airlines' arguments and fails to submit evidence of an accident
onboard her flights.  Rather, Ms Vincent states that she needs more
discovery in order to respond to American Airlines' motion.

Before addressing Ms Vincent's request, some background
on discovery in this MDL is necessary.  Following disposition of
the failure to warn claims, the court permitted plaintiffs limited
discovery in those remaining Warsaw cases in which plaintiffs made
other claims in addition to and apart from "failure to warn."
Specifically, the court allowed plaintiffs to serve interrogatories
regarding the operation of flights and document retention policies
of the airline defendants.  The court also allowed depositions of
flight crew members in those cases where the passenger was
deceased.  All other discovery was stayed.  These parameters were
established during the case management conferences held on October
24, 2006 and January 16, 2007.  While plaintiffs requested
additional discovery, the court proceeded to set dispositive motion

**United States District Court**
For the Northern District of California

1    hearing dates and directed plaintiffs to utilize FRCP 56(f), in

2    they event they believed that additional discovery was necessary.

3           The court created some confusion over the scope of

4    discovery in an order entered on July 10, 2007 granting an airline

5    defendant's motion for summary judgment in 04-3953 (Halterman).

6    Doc #628.   Therein the court denied plaintiff Halterman's FRCP

7    56(f) request stating, in part:

8           Moreover, Halterman has had ample opportunity to pursue
            discovery relating to his theory of the case.  Counsel for
9           Qantas represents that Halterman has never served an
            interrogatory requesting that Qantas identify the flight crew
10          of QF94 and that Halterman never noticed depositions of the
            flight crew.  Doc #39 at 17.  Halterman submits copies of his
11          interrogatories and requests for production (doc #616, exs A-
            D), which confirm that Halterman propounded minimal discovery.
12          Finally, as noted above, Halterman has never made a motion to
            compel or motion for continuance to conduct further discovery.
13   Doc #41 at 22:27-23:8.

14          Counsel for Mr Halterman promptly filed a motion for

15   clarification of the court's denial of Mr Halterman's FRCP 56(f)

16   request.  Doc #629.  Counsel reminded the court that plaintiffs'

17   discovery had been limited and specifically, that the court had

18   denied plaintiffs' requests to depose flight crew.  Doc #629.

19          The court noted the mistake and amended the <u>Halterman</u>

20   order to delete the above language on October 12, 2007.  Doc ##699,

21   700.  The court made clear that the <u>Halterman</u> order was not

22   intended to lift the partial discovery stay.  Doc #699.

23          Ms Vincent's opposition brief in this case was filed on

24   October 11, 2007, without the benefit of the court's clarification

25   on the scope of discovery.  Accordingly, Ms Vincent mistakenly

26   proceeded on the assumption that she should be afforded full

27   discovery before responding to American Airlines' summary judgment

28

motion.  Although the court's clarification was entered the next

day, Ms Vincent has not submitted any further briefing addressing

the merits of her claims and has not requested an opportunity to do

so.  American Airline represents and Ms Vincent does not dispute

that American Airlines has produced those categories of discovery

ordered by the court.  Finally, the court notes that Ms Vincent has

not appeared for deposition.  While American Airlines noticed her

deposition, Ms Vincent objected based on her belief that the

airline was wrongfully withholding flight crew depositions.  Doc

#697 at 4.

Because Ms Vincent fails to address American Airlines'

argument that no accident occurred onboard Flights 69 and 4944, and

instead focuses on a purported need for further discovery, the

court construes Ms Vincent's entire opposition as an FRCP 56(f)

request.  But the court need not rule on the merits of Ms Vincent's

request.  This is because American Airlines submits a copy of Ms

Vincent's verified interrogatory responses.  Doc #23, Ex C.

Therein, Ms Vincent states:

> The economy class allocated seating was very cramped
> especially when the passenger in front had his seat fully
> reclined backwards throughout the whole of the 10 hour flight.
> No footrest was provided in order to keep the Plaintiff's
> thigh from continual contact with the edge of the seat. * * *
> The Plaintiff was continually feeling dehydrated and requests
> for water were slow in arriving and very small in quantity
> (approximately 100 milliliters or 4 fluid ounces).  Plaintiff
> suffered a shortness of breath and felt the need to relax.
> During the 5 hour layover in Miami Airport the Plaintiff
> continued to suffer from pain and swollen calf of her left leg
> and was unable to walk normally other than visits to the
> lavatory or be [sic] reseated.  The seating on the flight to
> Freeport was very cramped and the Plaintiff's allocated
> seating was in seat B on the forward facing left hand side of
> the aircraft.  This seating arrangement did not permit the
> Plaintiff to obtain any movement whatsoever of her left leg.
> A request was made to the flight attendant to change seating
> to the opposite side but was told [sic] that the flight was

1

2     **less than one hour in duration and refused [sic] reseating
      based on that ground.  The amount of leg room in the seating
      well of Flight AA69 was unexpectedly more cramped than the
3     seating in the economy cabins of other international carriers
      recently flown with.**

4    Doc #23, Ex C at 3.

5         Ms Vincent goes on to state that the continuous pressure

6    to the back of her knee resulted in the development of DVT.  Doc

7    #23, Ex C at 5.  Ms Vincent's pain continued throughout her first

8    day in the Bahamas.  And on the morning of April 14, 2005, she was

9    examined by a physician after which she started DVT treatment that

10   lasted until December 2006.  Doc #23, Ex C at 5-6.

11        American Airlines correctly points out that sitting in an

12   uncomfortable position does not qualify as an Article 17 accident.

13   See Margrave v British Airways, 643 F Supp 510, 512 (SDNY

14   1986)("[E]xtended sitting in an airplane, even in an uncomfortable

15   position, cannot properly be characterized as the sort of

16   'accident' that triggers an airline's liability under the Warsaw

17   Convention.")  But as this court has previously noted, an

18   airline's refusal to reseat a passenger may constitute an Article

19   17 accident when the passenger requests to be moved for medical

20   reasons.  See October 12, 2007 ruling denying defendant airline's

21   motion for summary judgment in 03-1929 (Dabulis).  Doc #699.  Such

22   was the Ninth Circuit's holding in Olympic Airways v Husain, 316

23   F3d 829 (9th Cir 2002).

24        Husain involved a passenger's fatal reaction to cigarette

25   smoke in the aircraft cabin.  Upon boarding the flight, Dr Hanson

26   and his wife, plaintiff Rubina Husain, realized their seats were

27   located near the economy-class smoking section.  Given Hanson's

28   history of recurrent anaphylactic reactions to cigarette smoke,

1    Husain notified a flight attendant that Hanson was allergic to
2    smoke and requested that Hanson be reseated further away from the
3    smoking area.  Husain repeated her request several times to no
4    avail.  Hanson died in flight, apparently due to a reaction to the
5    ambient cigarette smoke.  Husain's lawsuit followed.

6            Judge Breyer of this district held that the flight
7    attendant's refusal to reseat Hanson constituted an Article 17
8    accident because it was in "blatant disregard of industry standards
9    and airline policies" and therefore "unexpected or unusual" under
10   Saks.  116 F Supp 2d 1121, 1134 (ND Cal 2000).  The Ninth Circuit
11   affirmed, agreeing that the refusal to reseat Hanson "was
12   unexpected and unusual in light of industry standards, Olympic
13   policy, and the simple nature of Dr Hanson's requested
14   accommodation."  316 F3d 829, 837 (9th Cir 2002).

15           While the factual record here is not as developed as that
16   in the Dabulis case addressed in the court's October 12, 2007
17   order, Ms Vincent's verified interrogatory responses show that she
18   requested to be reseated at least once during her American Airlines
19   flight and that Ms Vincent made the request for medical reasons.
20   The discovery responses also show that American Airlines denied the
21   request.  Accordingly, drawing all inferences in favor of the
22   nonmoving party, the court is unable to find an absence of disputed
23   fact whether an Article 17 accident occurred onboard Ms Vincent's
24   flight.  Accordingly, based on the current record, the court DENIES
25   American Airlines' motion for summary judgment.  The denial is
26   WITHOUT PREJUDICE.  Given the still early pendency of this case and
27   the confusion over the scope of discovery, the court finds that
28

13

**United States District Court**
For the Northern District of California

1   further factual development is warranted.  Accordingly, Ms Vincent

2   is ORDERED to appear for deposition.  The court will also permit Ms

3   Vincent to make an inspection of the subject aircrafts.  Ms Vincent

4   may also propound further interrogatories regarding the

5   availability of alternate seats on those flights for which she

6   requested reseating.  All discovery should be completed by February

7   29, 2008.  The dispositive motion hearing date is continued to

8   April 10, 2008.  The pretrial conference currently set for December

9   11, 2007 is VACATED and continued to June 12, 2008.  Because the

10  court does not rely on any of the exhibits addressed in American

11  Airlines' evidentiary objections, Doc #703, the objections are MOOT

12  and DENIED.

13  \\

14  \\

15  \\

16  \\

17  \\

18  \\

19  \\

20  \\

21  \\

22  \\

23  \\

24  \\

25  \\

26  \\

27  \\

28  \\

**United States District Court**
For the Northern District of California

III

  For reasons given above, American Airlines' motion for summary judgment in 07-1604 (Vincent) is DENIED WITHOUT PREJUDICE. The schedule in the case is as set forth above.

  The parties in 04-3831 (Richelet) shall appear for the pretrial conference currently scheduled for November 27, 2007 at 9:00am.

  As noted above, the court denied the airline defendants' motions for summary judgment in 01-3444 (Rietschel) and 03-1929 (Dabulis) on October 12, 2007.  Doc #699.  Accordingly, the parties in 01-3444 and 03-1929 shall appear for a pretrial conference on January 17, 2007 at 3:30 pm.

  SO ORDERED.

_____
VAUGHN R WALKER

United States District Chief Judge

15