IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re DEEP VEIN THROMBOSIS LITIGATION | MDL Docket No 04-1606 VRW |
| | AMENDED ORDER |
| This Document Relates To: | |
| Vincent v American Airlines, Inc, No 07-1604 | |
| Richelet v Lufthansa German Airlines, No 04-3831 | |
| Rietchel v US Airways, Inc, No 01-3444 | |
| Dabulis v Singapore Airlines, Inc, No 03-1929 | |
| _____ / | |

     On June 25, 2004, the Judicial Panel on Multidistrict Litigation centralized pre-trial proceedings in cases involving "complex core questions concerning whether various aspects of airline travel cause, or contribute to, the development of deep vein thrombosis in airline passengers." Doc #1 at 2. In total, some 78 actions were filed and transferred to this district. Ultimately, all transferred actions were assigned to the

undersigned. Deep vein thrombosis (DVT) is a medical condition that occurs when a thrombus (a blood clot) forms in a deep vein, usually in the extremities of the leg. DVT can lead to serious injury or death if the thrombus breaks off and lodges in the brain, lungs or heart, thereby causing a heart attack, stroke or other debilitating effects. Studies indicate a link between air travel and DVT, which can be attributed to relatively prolonged periods of immobility coupled with low cabin pressure and poor oxygenation (technically, "hypobaric hypoxia"). Plaintiffs in this litigation suffered (or sue on behalf of an individual who suffered) from DVT-related injuries during or after travel aboard commercial aircraft.

On February 14, 2005, the court granted summary judgment in favor of Boeing in its capacity as manufacturer of the aircraft in question in 17 cases. Doc #144, 356 F Supp 2d 1055 (ND Cal 2005). All claims against airline defendants arising from domestic flights ("non-Warsaw cases") were dismissed pursuant to the federal preemption rationale announced in the court's order of March 11, 2005. Doc #151, 2005 WL 591241 (ND Cal Mar 11, 2005). Plaintiffs appealed. On October 4, 2007, the Ninth Circuit affirmed in part, finding that the failure to warn claims were preempted by the Federal Aviation Act of 1958, 49 USC § 40103. <u>Montalvo v Spirit Airlines</u>, -- F3d --, 2007 WL 2874401 (9th Cir 2007). But the Ninth Circuit remanded plaintiffs' seating configuration claim for further factual development. Specifically, the panel found insufficient evidence on which to evaluate whether a seat reconfiguration would materially affect federal deregulation, which is a prerequisite for preemption under the Airline Deregulation Act of 1978, 49 USC § 41713(b)(1). <u>Montalvo</u>, 2007 WL 2874401 at 7-9.

MDL 1606 included approximately 50 cases in which plaintiffs alleged that they suffered from DVT-related injuries during or after international flights ("Warsaw cases"). On August 21, 2006, the court granted summary judgment in 37 Warsaw cases in which plaintiffs alleged liability based on asserted failure to warn regarding DVT. Doc #469, 2006 WL 2547459 (ND Cal Aug 21, 2006). See also Caman v Continental Airlines, 455 F3d 1087 (9th Cir 2006). The court directed entry of summary judgment under FRCP 54(b) in favor of any airline defendant against which the only Warsaw Convention accidents alleged were "the onset of DVT or the absence or insufficiency of a warning regarding DVT or policy level decisions regarding the same." Doc #469.

The following Warsaw Convention DVT cases remain in MDL 1606:

Rietchel v US Airways, Inc, No 01-3444
Dabulis v Singapore Airlines, Inc, No 03-1929
Richelet v Lufthansa German Airlines, No 04-3831
Vincent v American Airlines, Inc, No 07-1604

These are cases in which plaintiffs make other claims in addition to "failure to warn" claims. On December 4, 2006, the court granted partial summary judgment for the airline defendants on the failure to warn claims for the reasons announced in the court's August 21, 2006 order. Doc #528. On October 12, 2007, the court denied the airline defendants' motions for summary judgment on the remaining claims in 01-3444 (Rietchel) and 03-1929 (Dabulis). Doc #699.

Regarding 04-3831 (Richelet), the court set a dispositive motion hearing date of October 18, 2007. Doc #566. No summary

\\

3

judgment motions have been filed.  The case is currently set for a pretrial conference on November 27, 2007 at 9:00am.

Presently before the court is defendant American Airlines, Inc's ("American Airlines") motion for summary judgment in 07-1604 (Vincent).  Doc #690.  Because the court finds this matter suitable for determination without oral argument, the hearing scheduled for November 1, 2007, is VACATED.  See Civ LR 7-1(b).

I

A

"Once a properly documented motion has engaged the gears of Rule 56, the party to whom the motion is directed can shut down the machinery only by showing that a trialworthy issue exists." <u>McCarthy v Northwest Airlines, Inc</u>, 56 F3d 313, 315 (1st Cir 1995). That is, the court must determine whether genuine issues of material fact exist, resolving any doubt in favor of the party opposing the motion.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  <u>Anderson v Liberty Lobby, Inc</u>, 477 US 242, 248 (1986).  Further, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson</u>, 477 US at 248.  And the burden of establishing the absence of a genuine issue of material fact lies with the moving party.  <u>Celotex Corp v Catrett</u>, 477 US 317, 322-23 (1986).  Summary judgment is granted only if the moving party is entitled to judgment as a matter of law.  FRCP 56(c).

The nonmoving party may not simply rely on the pleadings, however, but must produce significant probative evidence, by affidavit or as otherwise provided in FRCP 56, supporting its claim that a genuine issue of material fact exists. <u>TW Elec Serv, Inc v Pacific Elec Contractors Ass'n</u>, 809 F2d 626, 630 (9th Cir 1987). Summary judgment is appropriate when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u> at 322. The evidence presented by the nonmoving party "is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, 477 US at 255. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson</u>, 477 US at 249.

The evidence presented by both parties must be admissible. FRCP 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. <u>Thornhill Publishing Co, Inc v GTE Corp</u>, 594 F2d 730, 738 (9th Cir 1979). Hearsay statements in affidavits are inadmissible. <u>Japan Telecom, Inc v Japan Telecom America Inc</u>, 287 F3d 866, 875 n 1 (9th Cir 2004).

B

The United States adheres to the Convention for the Unification of Certain Rules Relating to International Transportation by Air, concluded at Warsaw, Poland, October 12, 1929, popularly referred to as the "Warsaw Convention." 49 Stat

3000, reprinted in note following 49 USC § 40105.  The purposes of the Warsaw Convention are two-fold:  "providing uniformity in respect to documentation and certain procedural matters, and imposing limitations on liability."  <u>In re Aircrash in Bali, Indonesia on April 22, 1974</u>, 684 F2d 1301, 1307 (9th Cir 1982).  See also <u>Maugnie v Compagnie Nationale Air France</u>, 549 F2d 1256, 1259 (9th Cir 1977) ("[T]he Convention functions to protect passengers from the hazards of air travel and also spreads the accident cost of air transportation among all passengers.")

"[R]ecovery for a personal injury suffered on board an aircraft or in the course of embarking or disembarking, if not allowed under the Convention, is not available at all."  <u>El Al Israel Airlines, Ltd v Tseng</u>, 525 US 155, 161 (1999) (quotations and citation omitted).  The remaining MDL plaintiffs do not dispute that the injuries they sustained (DVT and resultant complications) were triggered during "international transportation" for purposes of Article 1(2).  Nor do plaintiffs dispute that the Warsaw Convention applies and preempts all claims arising under local law.  Accordingly, plaintiffs can recover from the airline defendants, if at all, only within the framework established by the Warsaw Convention.

Article 17 of the Warsaw Convention provides:

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the <u>accident</u> which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

49 Stat 3018 (emphasis added).

\\

In other words, as explained by the Supreme Court in <u>Air France v Saks</u>, 470 US 392 (1985), a carrier "is liable to a passenger under the terms of the Warsaw Convention only if the passenger proves that an 'accident' was the cause of her injury." <u>Saks</u>, 470 US at 396. In <u>Saks</u>, the Supreme Court defined "accident" for purposes of Article 17 as "an unexpected or unusual event or happening that is external to the passenger." <u>Saks</u>, 470 US at 405. "This definition should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries." <u>Saks</u>, 470 US at 405. And because any injury "is the product of a chain of causes," a plaintiff need only show that "some link in the chain was an unusual or unexpected event external to the passenger." <u>Saks</u>, 470 US at 406.

When, however, "the injury indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has not been caused by an accident, and Article 17 of the Warsaw Convention cannot apply." <u>Saks</u>, 470 US at 406. And because DVT "clearly is the type of internal reaction to the normal operation of the aircraft, with no unusual external event," the development of DVT is not itself an accident within the meaning of Article 17. <u>Rodriguez v Ansett Australia Ltd</u>, 383 F3d 914, 917 (9th Cir 2004), cert denied, 544 US 922 (2005). But DVT-related injuries may be compensable under the Warsaw Convention if caused by an Article 17 accident. With these principles in mind, the court proceeds to American Airlines' motion for summary judgment in 07-1604 (Vincent).

\\

\\

**II**

**A**

Plaintiff Mair Vincent (Ms Vincent) is a citizen of the United Kingdom and a resident of both Abergavenny, Monmouthshire, United Kingdom and Almeria, Spain. Doc #1 in 07-1604 (Compl), ¶1. According to Ms Vincent's complaint, on April 12, 2005, Ms Vincent was traveling as a fare paying passenger on an international air ticket, and boarded American Airlines Flight 69 from Madrid, Spain to Miami, Florida, a flight of almost 10 hours. Doc #1 ¶8. After a five hour layover, Ms Vincent boarded American Airlines Flight 4944 from Miami, Florida to Freeport, Bahamas, her ultimate destination. Doc #1 ¶8. Ms Vincent alleges that the seating on her flights was "very cramped" and that approximately halfway into the first flight, she "began to feel stiffness and tenderness in the calf of her left leg which was also swollen and warm to the touch." Doc #1 ¶9. Ms Vincent continued to suffer from pain in her left calf during the remainder of the plane trip. Doc #1 ¶9.

Ms Vincent filed her complaint in this action on March 21, 2007 alleging that an event or accident onboard her flight caused her to develop DVT. Doc #1 in 07-1604. In addition to failure to warn clams, which have already been dismissed, Vincent alleges that she experienced "unreasonably prolonged periods of immobility, irregular altitude, inadequate air circulation and oxygenation, inadequate pressurization within the cabin due to a faulty and abnormal pressurization system[s], low humidity, unusual delay due to bad weather or any other reason, turbulence, cramped seating, inadequate hydration, and/or other unexpected and/or

\\

unusual event associated with Defendant's aircraft and/or said flight * * *."  Doc #1 ¶10.

B

In its motion, American Airlines argues that there was no unusual or unexpected event external to Ms Vincent on Flight 69 or on Flight 4944 on April 12, 2005.  Doc #690 at 6.  American Airlines represents that there were no incident reports or reports of aircraft malfunction for these flights and that Ms Vincent has been unable to produce any evidence to support her accident allegations.  Doc #690 at 6, 13-14.

In her opposition, Ms Vincent fails to address American Airlines' arguments and fails to submit evidence of an accident onboard her flights.  Rather, Ms Vincent states that she needs more discovery in order to respond to American Airlines' motion.

Before addressing Ms Vincent's request, some background on discovery in this MDL is necessary.  Following disposition of the failure to warn claims, the court permitted plaintiffs limited discovery in those remaining Warsaw cases in which plaintiffs made other claims in addition to and apart from "failure to warn." Specifically, the court allowed plaintiffs to serve interrogatories regarding the operation of flights and document retention policies of the airline defendants.  The court also allowed depositions of flight crew members in those cases where the passenger was deceased.  All other discovery was stayed.  These parameters were established during the case management conferences held on October 24, 2006 and January 16, 2007.  While plaintiffs requested additional discovery, the court proceeded to set dispositive motion

**9**

hearing dates and directed plaintiffs to utilize FRCP 56(f), in they event they believed that additional discovery was necessary.

The court created some confusion over the scope of discovery in an order entered on July 10, 2007 granting an airline defendant's motion for summary judgment in 04-3953 (Halterman). Doc #628. Therein the court denied plaintiff Halterman's FRCP 56(f) request stating, in part:

> Moreover, Halterman has had ample opportunity to pursue discovery relating to his theory of the case. Counsel for Qantas represents that Halterman has never served an interrogatory requesting that Qantas identify the flight crew of QF94 and that Halterman never noticed depositions of the flight crew. Doc #39 at 17. Halterman submits copies of his interrogatories and requests for production (doc #616, exs A-D), which confirm that Halterman propounded minimal discovery. Finally, as noted above, Halterman has never made a motion to compel or motion for continuance to conduct further discovery.

Doc #41 at 22:27-23:8.

Counsel for Mr Halterman promptly filed a motion for clarification of the court's denial of Mr Halterman's FRCP 56(f) request. Doc #629. Counsel reminded the court that plaintiffs' discovery had been limited and specifically, that the court had denied plaintiffs' requests to depose flight crew. Doc #629.

The court noted the mistake and amended the Halterman order to delete the above language on October 12, 2007. Doc ##699, 700. The court made clear that the Halterman order was not intended to lift the partial discovery stay. Doc #699.

Ms Vincent's opposition brief in this case was filed on October 11, 2007, without the benefit of the court's clarification on the scope of discovery. Accordingly, Ms Vincent mistakenly proceeded on the assumption that she should be afforded full discovery before responding to American Airlines' summary judgment

motion. Although the court's clarification was entered the next day, Ms Vincent has not submitted any further briefing addressing the merits of her claims and has not requested an opportunity to do so. American Airline represents and Ms Vincent does not dispute that American Airlines has produced those categories of discovery ordered by the court. Finally, the court notes that Ms Vincent has not appeared for deposition. While American Airlines noticed her deposition, Ms Vincent objected based on her belief that the airline was wrongfully withholding flight crew depositions. Doc #697 at 4.

Because Ms Vincent fails to address American Airlines' argument that no accident occurred onboard Flights 69 and 4944, and instead focuses on a purported need for further discovery, the court construes Ms Vincent's entire opposition as an FRCP 56(f) request. But the court need not rule on the merits of Ms Vincent's request. This is because American Airlines submits a copy of Ms Vincent's verified interrogatory responses. Doc #23, Ex C. Therein, Ms Vincent states:

> The economy class allocated seating was very cramped especially when the passenger in front had his seat fully reclined backwards throughout the whole of the 10 hour flight. No footrest was provided in order to keep the Plaintiff's thigh from continual contact with the edge of the seat. * * * The Plaintiff was continually feeling dehydrated and requests for water were slow in arriving and very small in quantity (approximately 100 milliliters or 4 fluid ounces). Plaintiff suffered a shortness of breath and felt the need to relax. During the 5 hour layover in Miami Airport the Plaintiff continued to suffer from pain and swollen calf of her left leg and was unable to walk normally other than visits to the lavatory or be [sic] reseated. The seating on the flight to Freeport was very cramped and the Plaintiff's allocated seating was in seat B on the forward facing left hand side of the aircraft. This seating arrangement did not permit the Plaintiff to obtain any movement whatsoever of her left leg. A request was made to the flight attendant to change seating to the opposite side but was told [sic] that the flight was

11

> less than one hour in duration and refused [sic] reseating based on that ground. The amount of leg room in the seating well of Flight AA69 was unexpectedly more cramped than the seating in the economy cabins of other international carriers recently flown with.

Doc #23, Ex C at 3.

Ms Vincent goes on to state that the continuous pressure to the back of her knee resulted in the development of DVT. Doc #23, Ex C at 5. Ms Vincent's pain continued throughout her first day in the Bahamas. And on the morning of April 14, 2005, she was examined by a physician after which she started DVT treatment that lasted until December 2006. Doc #23, Ex C at 5-6.

American Airlines correctly points out that sitting in an uncomfortable position does not qualify as an Article 17 accident. See Margrave v British Airways, 643 F Supp 510, 512 (SDNY 1986)("[E]xtended sitting in an airplane, even in an uncomfortable position, cannot properly be characterized as the sort of 'accident' that triggers an airline's liability under the Warsaw Convention.") But as this court has previously noted, an airline's refusal to reseat a passenger may constitute an Article 17 accident when the passenger requests to be moved for medical reasons. See October 12, 2007 ruling denying defendant airline's motion for summary judgment in 03-1929 (Dabulis). Doc #699. Such was the Ninth Circuit's holding in Olympic Airways v Husain, 316 F3d 829 (9th Cir 2002).

Husain involved a passenger's fatal reaction to cigarette smoke in the aircraft cabin. Upon boarding the flight, Dr Hanson and his wife, plaintiff Rubina Husain, realized their seats were located near the economy-class smoking section. Given Hanson's history of recurrent anaphylactic reactions to cigarette smoke,

12

Husain notified a flight attendant that Hanson was allergic to smoke and requested that Hanson be reseated further away from the smoking area. Husain repeated her request several times to no avail. Hanson died in flight, apparently due to a reaction to the ambient cigarette smoke. Husain's lawsuit followed.

Judge Breyer of this district held that the flight attendant's refusal to reseat Hanson constituted an Article 17 accident because it was in "blatant disregard of industry standards and airline policies" and therefore "unexpected or unusual" under Saks. 116 F Supp 2d 1121, 1134 (ND Cal 2000). The Ninth Circuit affirmed, agreeing that the refusal to reseat Hanson "was unexpected and unusual in light of industry standards, Olympic policy, and the simple nature of Dr Hanson's requested accommodation." 316 F3d 829, 837 (9th Cir 2002).

While the factual record here is not as developed as that in the Dabulis case addressed in the court's October 12, 2007 order, Ms Vincent's verified interrogatory responses show that she requested to be reseated at least once during her American Airlines flight and that Ms Vincent made the request for medical reasons. The discovery responses also show that American Airlines denied the request. Accordingly, drawing all inferences in favor of the nonmoving party, the court is unable to find an absence of disputed fact whether an Article 17 accident occurred onboard Ms Vincent's flight. Accordingly, based on the current record, the court DENIES American Airlines' motion for summary judgment. The denial is WITHOUT PREJUDICE. Given the still early pendency of this case and the confusion over the scope of discovery, the court finds that

13

further factual development is warranted.  Accordingly, Ms Vincent is ORDERED to appear for deposition.  The court will also permit Ms Vincent to make an inspection of the subject aircrafts.  Ms Vincent may also propound further interrogatories regarding the availability of alternate seats on those flights for which she requested reseating.  All discovery should be completed by February 29, 2008.  The dispositive motion hearing date is continued to April 10, 2008.  The pretrial conference currently set for December 11, 2007 is VACATED and continued to June 12, 2008.  Because the court does not rely on any of the exhibits addressed in American Airlines' evidentiary objections, Doc #703, the objections are MOOT and DENIED.

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

**III**

For reasons given above, American Airlines' motion for summary judgment in 07-1604 (Vincent) is DENIED WITHOUT PREJUDICE. The schedule in the case is as set forth above.

The parties in 04-3831 (Richelet) shall appear for the pretrial conference currently scheduled for November 27, 2007 at 9:00am.

As noted above, the court denied the airline defendants' motions for summary judgment in 01-3444 (Rietschel) and 03-1929 (Dabulis) on October 12, 2007. Doc #699. Accordingly, the parties in 01-3444 and 03-1929 shall appear for a pretrial conference on January 17, 2008 at 3:30pm.

SO ORDERED.

**VAUGHN R WALKER**

United States District Chief Judge